In the Matter of the Petition of MARTHA M. MOHR for an Allowance Out of the Surplus Income of the Estate of IDA A. FLAGLER, an Incompetent.

Supreme Court, New York County, July 20, 1927.

**Insane persons — income — allowance out of surplus income to relatives — report of referee in favor of allowance is confirmed.**

The report of the referee in favor of making an allowance to the petitioner out of the surplus income of the incompetent is confirmed, since it appears that the incompetent will never regain her mind, that her income is largely in excess of that required to sustain her and that in view of the relationship between the petitioner's family and the incompetent preceding the incompetency, it is fair to assume that the incompetent would, if in her right mind, aid the petitioner. The fact that similar applications may be made will not be considered in opposition to the application here.

APPLICATION to confirm the report of the referee in a proceeding brought by a second cousin of Ida A. Flagler, an incompetent, for an allowance out of the surplus income of the latter's estate.

*Emanuel Lewin*, for the petitioner.

*Delancey Nicoll [Gerald Donovan* of counsel], for the committee of the property of Ida A. Flagler.

*Gerald Donovan*, for Dr. Charles W. Pilgrim, as committee of the person of Ida A. Flagler.

*Ralph F. Kane*, special guardian for Ida A. Flagler.

*Agar, Ely & Fulton [Alfred Ely* of counsel], for the heirs and next of kin of Ida A. Flagler.

LEVY, J. As the learned referee has well stated: " There is abundant authority sustaining the power of the court to grant an allowance from the surplus income of the incompetent in a proper case, that is to say, if upon the evidence it appears that if she were in her right mind and with knowledge of the circumstances, it could reasonably be found that she would have so acted." (*Matter of Farmers' Loan & Trust Co.*, 181 App. Div. 642; affd., 225 N. Y. 666; 19 Halsbury's Laws of England, § 909, p. 438; Shelford Law of Lunatics [2d ed.], 205; *Ex parte Whitbread, In re Hinde, a Lunatic*, 2 Meriv. 99; *Matter of Flagler, In re Moore*, 130 Misc. 554; *Matter of Flagler [Application of Tash]*, 126 id. 764; *Matter of Reichard*, N. Y. L. J. Feb. 14, 1919; 32 C. J. 708; *Matter of Lord*, 227 N. Y. 145.)

In granting applications of this character the court is not actuated

* Modified, 222 App. Div. ——.   See, also, 130 Misc. 554.

by any supposed interest which the applicant may have in the property of the incompetent. Relief may be had upon the principle that the court will act with reference to the lunatic and for his benefit, as it is probable that he would have acted for himself if he were of sound mind. It is on this theory that allowances to collateral relatives may be amply sustained. (32 C. J. 708; 19 Halsbury's Laws of England, § 909, p. 438.)

In a previous application of a similar nature by another second cousin of this incompetent (*Matter of Flagler* [*Application of Tash*], *supra*), I took occasion to point out that the estate of this incompetent " is vast, consisting of $11,000,000 and over, a large part of which is the result of accumulation of unexpended income. With all the luxury in which the incompetent is maintained, there is an annual unexpended surplus of approximately $250,000. Taking into consideration every conceivable disbursement for her maintenance in her proper station of life, the full surplus cannot possibly be spent for her personal needs." As matter of fact, the estate is even larger at present, rapidly approaching some $12,000,000.

The petitioner's grandmother and Ida Flagler's mother were sisters. Although there is little evidence of direct contact between the petitioner and the incompetent, who is about thirty years older, there is considerable proof that Ida Flagler was extremely friendly to the petitioner's brother George and to her mother. She visited the family in Philadelphia on several occasions, staying in their home for a number of days and on one of these visits she took petitioner's brother George back to New York with her to give him an opportunity of " seeing the sights." She sent money and clothing to the petitioner's household periodically and the latter wore dresses which her mother made from these gifts, not to mention the fact that petitioner's father was buried in a suit of clothes which had belonged to Mr. Flagler, and that George also wore clothes of the latter which had been sent to the petitioner's home. There is much additional proof in the record, some of it documentary, that the incompetent possessed a generous and sympathetic nature, and that she was quick to respond to the appeals of those of her relatives who were in need and deserving of aid. Indeed, instances of her assistance to her kin in distress are by no means confined to her acts of charity toward members of the petitioner's immediate family. It is unnecessary, however, in view of the admirable summary of the testimony in the referee's report, to comment farther upon that feature of the record which has to do with Ida Flagler's generous and charitable disposition while she was still sane. It remains only to consider whether the

Misc. 375]                Supreme Court, July, 1927.

petitioner is deserving and in need of assistance, and if so, to what extent.

The learned referee has found " that petitioner and her husband are decent, respectable and honest folk, who have lived modestly, worked hard and to the utmost of their ability. They are poor and in sore need without prospects of improvement in their financial condition." The petitioner is over forty-nine years of age and is married to a man " of limited earning power and subnormal physical health." He is at present out of employment, and his age — fifty years — his personality, his physical condition, and his life history all contribute to make the outlook for the family a dubious one indeed. It is extremely unlikely that he will ever earn more than twenty-five dollars a week, even should he be able to find employment. His wife, the petitioner, is at present earning fifteen dollars a week, which is all that she, her husband, and their ten-year old niece, who has been brought up with them as their daughter from her very cradle, have for their sustenance. In fact, the age of the petitioner and her physique render it wholly doubtful whether this income will hold out for any considerable period. The roof of the house in which they live is badly in need of repair; and taxes, assessments, coal bills, doctor's bills and other debts remain unpaid.

The learned referee has observed the witnesses and especially the petitioner and her husband. He has lent to his grave task learning and experience not only of intestimable value, but the like of which it is difficult to locate. It is significant, therefore, that he has come to the conclusion that " if Mrs. Flagler were now competent, and the condition of this petitioner were presented to her, she would grant the allowance asked." He has completely answered the contention that " there are a horde of other relatives more or less, remote, who may apply to the court for allowances " by pointing out that " it is sufficient to state that each application must be resolved on its own facts," and that " the estate is so large that there is no fear that the moderate allowances granted will in the slightest degree affect the proper and generous care of the incompetent." The latter is seventy-eight years of age, and in the opinion of eminent alienists will never again experience a lucid interval. She has made no will. If ever the stage is reached where the allowances meritoriously granted threaten to reach such proportions as to endanger the possibility of assuring proper care of the incompetent, it will then be time to call a halt. Benevolent persons do not refrain from acts of kindness and charity merely because requests for assistance may be made upon them by others. Placing itself as far as possible in the position of Ida Flagler, were

she now sane, this court cannot deny aid to those whom it believes Ida Flagler would have assisted, only for the reason that similar applications may be made by other relatives.

In opposing the confirmation of the report, it has been argued by counsel for the committee that certain evidence in regard to the incompetent's acts of kindness was improperly received. Entirely apart from the fact that I fully agree with the learned referee that in matters of this character the circumstances call for a relaxation, to some extent, of the strict rules of evidence, I consider that there is abundant evidence beyond that complained against, to support the referee's findings.

The motion to confirm is granted. Order signed.