Leon D. Lazer, J.
The infant plaintiff in this action has arrived at a settlement of his negligence case and moves to disallow a lien asserted by the Commissioner of Social Services of the Suffolk County Social Services District (“ Social Services ”) and for approval of a proposed order of compromise. The motion is opposed by the commissioner.
The plaintiff, now nine years of age, was struck by a vehicle on October 30,1971 while crossing the street. He was removed to the Brookhaven Memorial Hospital where his injuries were diagnosed as a fracture of the right femur, lacerations, contusions and a concussion. He was placed in traction for six weeks and thereafter wore a cast for another two months. Recovery appears good although the child still has some atrophy and weakness of the right lower extremity. Special damages are substantial. The treating physician’s bill is $2,325 and the hospital bill appears to have totalled $5,291.27, of which $3,190.61 was paid through the father’s major medical insurance policy and the balance of $2,100.66 was paid by Social Services. It is the commissioner’s lien in the latter amount which is in issue here. There is no outstanding hospital lien.
The liability insurance policy covering the defendants has minimum limits of $10,000/$20,000 and the settlement offer is *140 $9,500. The plaintiff’s attorneys assert that under the circumstances approval of[1] the compromise application is in the infant’s interest.
The infant’s parents appear to be living apart and at the time of the injury the child was residing with his mother who was receiving welfare assistance from Social Services. Although no hospital bill was ever rendered to the, mother, after the infant agreed upon a settlement with the defendants the commissioner filed a lien for medical assistance pursuant, to section 104-b of the Social Services Law in the amount of $2,100.66.
The commissioner opposes the motion to disallow his lien with a three-fold argument: (1) the amount of special damages is part of the settlement value of the case and since the infant is being compensated for this value he should reimburse Social Services for the amount it expended to defray those damages; (2) if Social Services had not paid the hospital bill, the hospital would have filed a lien and the infant would have been required to satisfy that; (3) payment of the hospital bill was actually the obligation of the parents who would have been reimbursed had they paid it. Social Services, which assumed the parent’s burden, is similarly entitled to be recompensed.
The commissioner’s lien is statutory. It arises from section 104-b of the Social Services Law which provides that public welfare officials shall have a lien on moneys recovered in personal injury suits by welfare recipients for the cost of ‘ ‘ public assistance and care ’ ’ rendered at or after the date of the injury. Section 104 (subd. 1) of the same law provides a public welfare official with a right of action against a person discovered to have real or personal property if such person received assistance during the preceding 10 years. Section 104 (subd. 2) contains a qualification with respect to infants’ property: u No right of action shall accrue against an infant by reason of the assistance or care granted to him unless at the time it was granted the infant was possessed of money and property in excess of his reasonable requirements, .taking into account his maintenance, education, medical care and other factors applicable to his condition.”
It is a settled rule of statutory construction that where words of a statute are free from ambiguity and express plainly, clearly and distinctly the legislative intent, resort may not be had to other means of interpretation (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 75), and construction is not the business of a court (People ex rel. New York C. & H. R.R.R. Co., v. Woodbury, 208 N. Y. 421). Nevertheless, the court takes judicial *141 notice of the fact that Social Services liens are sometimes still enforced against infant tort recoveries in this State, resulting in unequal protection for the children whose funds are thus depleted. Therefore, it is time to construe the statute in the hope that appellate review will establish a consistency in judicial policy.
Under the common law there was no right of recovery of assistance given to the poor (Graham, Public Assistance: The Right to Receive: The Obligation to Repay, 43 N. Y. U. L. Rev. 451, 478) because such assistance was in the nature of charity to which the recipient was legally entitled (Selectmen of Bennington v. McGennes, N. Chip. Vt. [1790] )[1] and no obligation to repay could be imposed upon him (City of Albany v. McNamara, 117 N. Y. 168 [1889]). Not until 1896 were welfare officials in New York granted the right to recover assistance (L. 1896, ch. 225).[2] The language of section 104 of the Social Services Law makes it clear that the New York recovery statute is based upon implied contract (Matter of Black, 150 Misc. 433) although the doctrine of absolute liability has some support (Trussell v. Kostiw, 35 Misc 2d 60; Matter of Lang, 242 App. Div. 781). Sections 104 and 104-b are in derogation of the common law as it relates to contracts because they violate the rule that performance of a legal duty cannot furnish consideration for an executory promise by another (Weed v. Spears, 193 N. Y. 289; Olmstead v. Latimer, 158 N. Y. 313; Vanderbilt v. Schreyer, 91 N. Y. 392) and the rule that a contract cannot be implied in fact where the facts are inconsistent with its existence (Miller v. Schloss, 218 N. Y. 400). The commissioner has a legal duty to furnish medical assistance to persons eligible therefor (Social Services Law, § 365). By its recovery statute the State exacts either a promise of recovery from its welfare recipients or it imposes an absolute liability on them. This establishment of a new cause of action in derogation of the common law commands strict construction of the statute involved (Berger v. City of New York, 260 App. Div. 402, affd. 285 N. Y. 723). Such construction mandates that section 104 (subd. 2 precluding recovery from an infant except under .stated circumstances) be *142 applied to the lien authorized under section 104-b. The two sections must be read in pari materia (Morgan v. Hedstrom, 164 N. Y. 224) for it is settled doctrine that when words of a statute are free from ambiguity the language will be given its commonly understood meaning (Matter of Common Council of City of Gloversville v. Town Bd. of Town of Johnstown, 37 A D 2d 459).
The cases construing section 104 (subd. 2) have held consistently that it precludes recovery of expenditures for “ necessaries ” made at a time when the infant had no excess funds (see Galante v. Doe, 68 Misc 2d 295; Matter of Taff, 61 Misc 2d 602; Matter of Woods v. Mason, 32 Misc 2d 745). “ Necessaries ” as a word of art includes medical and hospital expenses (Matter of Burt, 160 Misc. 218, mod. 254 App. Div. 584; Ross v. Fisher, 223 App. Div. 342; Potter v. Thomas, 164 N. Y. S. 923). Section 363 of the Social Services Law defines medical assistance as a “ necessity ’ ’.[3]
It is an inescapable conclusion that section 104 (subd. 2) precludes enforcement of the commissioner’s lien against an infant in these circumstances. This conclusion, if not its reasoning, is supported by other nisi prius determinations (see Ibarra v. Fusco, N. Y. L. J., Jan. 12, 1973, p. 17, col. 7; Collins v. Ruiz, N. Y. L. J., March 23, 1973, p. 17, col. 5; Nieves v. Mundera, N. Y. L. J., Nov. 29, 1972, p. 19, col. 2; Galante v. Doe, 68 Misc. 2d 295, supra). Nevertheless, the somewhat procrustean contentions of the commissioner must be examined.
The theory that the infant will be reimbursed for his hospital bill by the defendants and should in turn repay Social Services ignores both the serious injuries in this case and the magnitude of the special damages. The latter approach in total amount that of the entire settlement and certainly exceed the net proceeds to be received by the infant. The settlement was influenced more by insurance policy limitations than anything else. It was made before any lien was filed by the commissioner and no hospital lien was ever filed. Reimbursement of the commissioner would impose the cost of the attorney’s fees for the recovery of the amount due upon the child (see Matter of Glazer v. Department of Hosps. of City of N. Y., 2 Misc 2d 207 for a discussion of the injustice of such a result).
•
The commissioner’s assertion that his lien should be enforced because, absent the payment by Social Services, the hospital would have filed a lien and been paid is the most specious of his *143 theses. Section 365 of the Social Services Law requires the commissioner to provide medical assistance to eligible persons. Under section 398, in the case of an emergency where prior authorization cannot be obtained, he must pay the costs of a hospital which has followed prescribed procedures (Matter of St. Clare’s Hosp. v. Breslin, 37 Misc 2d 686, affd. 19 A D 2d 922). The commissioner is the primary obligor against whom the hospital must proceed (Mount Sinai Hosp. v. Brinn, 73 Misc 2d 1; Knickerbocker Hosp. v. Downing, 65 Misc 2d 278) and only he, in turn, after payment can bring an action for recovery of the hospital costs (Knickerbocker Hosp. v. Downing, supra).
Finally, it is reasoned that since Social Services discharged the parents’ obligation when it paid the hospital bill, it should now be recompensed, particularly since the parents would have been compensated had they paid the bill. Here the mother was receiving welfare assistance and the father did pay part of the bill through his health insurance — and indeed he has not been reimbursed. The parents’ cause of action for loss of services and expenditures, if it existed, would have been subject to the same unavoidable compression on settlement as was that of their child.
None of these contentions of the commissioner confront or explain what appears to be the clear intent of the Legislature.
The commissioner also attacks the [1] ‘ legal gymnastics ” by which plaintiff seeks to pay his doctor’s “ lien ” while refusing payment to Social Services. Since that payment must be authorized in the compromise order, this criticism of the plaintiff must be considered by the court. There is no lien, common-law or statutory, for a doctor’s medical services (Woodley v. National Transp. Co., 208 Misc. 732; Viviani v. Howard Johnsons’ Inc., 130 N. Y. S. 2d 331; Bragg v. Nash, 208 Misc. 746) and an effort to provide a statutory lien was defeated in the Legislature in 1949 (Sen. Int. 2045, Pr. 2253). Protection of claims for medical services is usually obtained through an assignment of the proceeds of the tort settlement (Matter of Neilson Rlty. Co. v. Motor Vehicle Acc. Ind. Corp., 47 Misc 2d 260). The doctor has reduced his bill from $2,325 to $1,500. He may recover from the infant for medical services since these are necessaries (Santasiero v. Briggs, 278 App. Div. 15; Goodman v. Alexander, 165 N. Y. 289; Cianci v. Board of Educ., 16 A D 2d 680) and chargeable directly to the infant if the parents are unable to pay or refuse to do so (Stetson v. Russell, 130 Misc. 713) or if the parent or guardian did nothing toward his care (Santasiero v. Briggs, supra; Matter of Taylor, 153 Misc. 673; Cianci v. Board *144 of Educ., supra) or where the infant is not living with the parent (International Text Book Co. v. Connelly, 206 N. Y. 188).
It is the holding of this court that a county social services district cannot enforce a lien for medical expenses against an infant in a tort action, if, at the time the assistance was rendered, the infant had no property or funds in excess of his reasonable requirements. If this holding is correct, then those infants from whose funds such liens are still being satisfied are victims of an invidious discrimination. If the holding is erroneous, the public is being deprived of its rightful due. Consistency of interpretation is a necessity. Pending appellate review, this court will continue to disallow the type of lien in issue here regardless of whether the payment is approved by the infant or his guardians.
Compromise order signed. Submit order disallowing lien.

. “ Poverty and distress give a man, by law, a claim on the humanity of society for relief.”

. And it was not until 1936 (L. 1936, ch. 463) that infant’s funds were granted the immunity against recovery of assistance by a welfare department. Section 104 (subd. 2) of the Social Services Law is the current statute which reflects this legislation. The Poor Law provision of 1896 permitting recovery was replaced by section 128 of the Public Welfare Law (L. 1929, ch. 565) from which section 104 of the Social Services Law is derived.

. “ Necessary physieke ” is one of the items enumerated ;by Lord Coke in Coke on Littleton, 172-a, for which “ an infant may bind himself to pay